**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Chantel Headspeth and Kaylee McBride,    )
           )
   on behalf of themselves and     )   Case No. 2:19-cv-2062
   others similarly situated,       )
           )   Judge Sarah D. Morrison
          Plaintiffs,   )
           )   Magistrate Judge Chelsey M. Vascura
   v.           )
           )
TPUSA, Inc. d/b/a Teleperformance USA,  )
           )
        Defendant.   )

## JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT

Named Plaintiffs Chantel Headspeth and Kaylee McBride ("Named Plaintiffs"), on behalf of themselves and all other similarly situated individuals, and Defendant TPUSA, Inc. dba Teleperformance USA ("Defendant" or "TPUSA") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a private mediator.

The following documents are submitted for the Court's approval:

Exhibit 1: Stipulation of Settlement (the "Agreement")[1], with the following Exhibit:

      Exhibit A: Settlement Notice to Class Members;

Exhibit 2: Proposed Approval Entry.

Exhibit 3: Declarations of Peter Contreras and Matthew J.P. Coffman.

---

[1]  Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Stipulation of Settlement.

1

63264830;1

<u>**MEMORANDUM IN SUPPORT**</u>

I.      <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>.

      A.      <u>Summary of the Claims and Procedural History</u>.

On May 20, 2019, Named Plaintiffs filed this case (the "Lawsuit" or the "Action") against Defendant TPUSA on behalf of themselves and other similarly situated current and former technical support associates and those working in other Ohio call center positions employed by Defendant. (Contreras Decl. ¶ 8; Coffman Decl. ¶ 13).

In the Action, Named Plaintiffs alleged that TPUSA failed to pay hourly non-exempt technical support associates and Ohio call center employees overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201 *et seq.* ("FLSA"). Specifically, Named Plaintiffs alleged that TPUSA violated the FLSA by allegedly failing to pay hourly non-exempt employees for alleged pre-shift work, including time allegedly spent locating and securing equipment each day and booting up computers and work programs. TPUSA denies these allegations and asserts that it properly paid its hourly non-exempt technical support associates and Ohio call center employees, including Named Plaintiffs, for all hours worked.

On July 8, 2020, this Court issued an order (ECF No. 60) lifting a stay[2] and granting Plaintiffs' motion for conditional certification of this case as a collective action. Notice and Consent forms were sent to the FLSA Putative Class, with over 10,000 current and former TPUSA

---

[2] As more fully addressed in Plaintiffs' unopposed motion for attorney's fees and costs, Defendant moved for and obtained a stay in this matter while another FLSA collective action, *Cazeau v. TPUSA, Inc.*, Case No. 2:16-cv-321. against it was pending in Utah.

63264830;1

employees receiving notice[3]. Ultimately, 1,070 individuals ("Opt-In Plaintiffs"), including Named Plaintiffs,[4] joined the lawsuit.[5]

The Parties mediated this case with Jerome F. Weiss, Esq. on March 2, 2022.  Prior to the mediation, TPUSA provided time and compensation records for Plaintiffs and conducted an analysis of Plaintiffs' alleged damages, with the assistance of a data analytics consultant. Plaintiffs' Counsel, with the assistance of its own consultant, performed their own damages analysis using the same information.  After a full day of mediation, the Parties reached a settlement. (Contreras Decl. ¶ 21; Coffman Decl. ¶ 26).

C.      Summary of the Key Settlement Terms.

The Total Settlement Amount is $460,000.00. The Total Settlement Amount is comprised of the following agreed figures: (a) the Class Members Settlement Amount in the amount of $187,030 which includes all individual Settlement Payments to the 1,070 Plaintiffs[6]; (b) Service Payments of $7,500 to each of the two (2) Named Plaintiffs for their services in bringing and prosecuting this Action; (c) Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs in the amount of $250,000; and (d) the Claims Administrator Fees and Costs in the amount of $7,970[7]. (Contreras Decl. ¶ 39; Coffman Decl. ¶ 44).

The existence of and the amount of unpaid time, if any, were primary disputes between the Parties. Plaintiffs additionally alleged that the failure to preserve badge swipe data for the facilities

---

[3] Notice was distributed to many employees who were ultimately found to have no damages and/or claims and thus the notice process was over-inclusive.

[4] Named Plaintiffs and the Opt-In Plaintiffs will collectively be referred to as "Plaintiffs."

[5] Because notice was distributed to employees who had no damages and/or claims, it was determined that many Opt-In Plaintiffs had no damages during the damages analysis performed before mediation by the Parties' respective economists.

[6] Minimum payments of $10 will be issued to those Opt-In Plaintiffs who did not have damages and/or claims based on the Parties' analysis in exchange for their releases.

[7] Plaintiffs are contemporaneously filing a separate unopposed motion for approval of the service awards, attorney's fees, litigation costs, and administration expenses.

63264830;1

constituted spoliation of evidence and amended their complaint to add such a claim after conducting discovery on the issue. Defendant denies that spoliation occurred.

According to Plaintiffs' damages model, the Class Members Settlement Amount reflects payment of approximately 15 minutes per day for each workday in any workweek that a Class Member recorded at least 40 hours of work during the Applicable Class Period. This amount of time was settled upon as reasonable as a result of information learned during discovery, the mediation, and settlement discussions. Plaintiffs will receive a proportional Settlement Payment based on the total number of workweeks in the relevant time period in which they worked at least 40 hours. This type of allocation is commonly used in class and collective action settlements. (Contreras Decl. ¶ 49; Coffman Decl. ¶ 54).  Plaintiffs assert that this recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, 833 Fed. Appx. 430, 431, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class) (Contreras Decl. ¶ 50; Coffman Decl. ¶ 55).

In exchange for the Total Settlement Amount in the Agreement, this Lawsuit will be dismissed with prejudice, and the Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit.  (Contreras Decl. ¶ 51; Coffman Decl. ¶ 56).

## II.     PROPRIETY OF APPROVAL OF THE SETTLEMENT[8].

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A.      The Seven-Factor Standard is Satisfied.

---

[8] Because several components of the Settlement are addressed in Plaintiffs' unopposed motion for approval of Named Plaintiffs' service awards, and attorney's fees and costs occurred in the Action, the Parties submit that this Motion for Approval should be considered contemporaneously with Plaintiffs' unopposed motion for approval.

4

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The Settlement satisfies each of these elements.

1.      *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, with the assistance of a neutral

5

63264830;1

mediator.  (Contreras Decl. ¶ 44; Coffman Decl. ¶ 49).  As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

2.  *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to engage in further costly litigation after already spending several years litigating this matter, such as additional formal written discovery after already conducting the same and addressing numerous outstanding discovery disputes, up to fifty (50) depositions of Opt-In Plaintiffs[9] and additional depositions of Defendant's representatives, dispositive motions, trial, and potential appeals.  The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Contreras Decl. ¶ 48; Coffman Decl. ¶ 53).

3.  *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced thousands of pages of documentation during formal written discovery and necessary payroll and timekeeping information and existing badge swipe information for Plaintiffs, and conducted its own analysis of Plaintiffs' alleged damages based on

---

[9] Both Named Plaintiffs were deposed during the Action.

6

Plaintiffs' allegations and Defendant's own assessment of the merits of Plaintiffs' claims and Defendant's defenses.  Likewise, Plaintiffs' Counsel interviewed many Plaintiffs and obtained declarations which supported Plaintiffs' allegations. Moreover, Plaintiffs engaged the services of an economist to build a damages model which was instrumental in guiding settlement negotiations. (Contreras Decl. ¶ 54; Coffman Decl. ¶ 59).  In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4. *The Risks of Litigation Favor Approval.*

The Settlement represents a compromise of disputed claims.  Specifically, Named Plaintiffs allege that they and other hourly employees were not compensated for all work they performed each shift.  On the other hand, Defendant denies these allegations and asserts that it has fully compensated its employees for all time worked.

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies and whether the claims alleged can proceed collectively.

Accordingly, if this case had not settled, it is possible that there would be no recovery for the Plaintiffs at all. (Contreras Decl. ¶ 53; Coffman Decl. ¶ 58).

### 5. *The Opinion of Plaintiffs' Counsel Favors Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions.  At all times, they have acted in good faith and have vigorously represented the interests of the Plaintiffs over several years of litigating this Action. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. (Contreras Decl. ¶ 50; Coffman Decl. ¶ 55).

63264830;1

"The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the settlement.

6.  *The Reaction of Absent Class Members*.

If the Court approves the settlement, the Plaintiffs will receive a payment that reflects approximately 15 minutes of unpaid work each day in any week that a Plaintiff recorded 40 or more hours of work. Plaintiffs' Counsel has not received any indication that Plaintiffs would object to such payment.

7.  *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)).  Like in *Wright*, "the settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.*  Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

B.  The Settlement Distributions Are Fair, Reasonable and Adequate.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

1.  *The Individual Payments are Reasonable and Adequate*.

As part of their pre-mediation evaluation, Plaintiffs' Counsel retained an economist to analyze the class data provided by Defendant's counsel. Although Defendant contends that Plaintiffs are not owed anything, the Settlement Payments reflect payment for approximately 15

8

minutes of additional time each workday in any week that a Plaintiff recorded 40 or more hours of work in accordance with Plaintiffs' damages model. This amount of time was settled upon as reasonable based on the information learned during mediation, settlement discussions, and informal discovery. (Contreras Decl. ¶ 49; Coffman Decl. ¶ 54). Plaintiffs assert that this recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc.*, 2021 U.S. App. LEXIS 983 (holding that 32% of alleged damages was a substantial recovery for the class).

All Settlement Payments will be calculated proportionally based on the number of workweeks during the lookback period that Plaintiffs worked at least 40 hours. (Contreras Decl. ¶ 49; Coffman Decl. ¶ 54). As such, each Plaintiff will obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant and the amount of hours he or she allegedly worked each week within the period of time covered by the Settlement. Plaintiffs who did not work at least 40 hours in any workweek during such period will receive a minimum payment of $10.

Plaintiffs are contemporaneously filing a separate unopposed motion for approval of Named Plaintiffs' service awards, and attorney's fees and costs incurred in the Action. In that motion, Plaintiffs demonstrate the appropriateness each of those settlement terms as part of the overall resolution reached at mediation.

III.     **CONCLUSION.**

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice and retain jurisdiction to enforce the settlement if necessary.

63264830;1

Respectfully submitted,

/s/ Peter A. Contreras
Peter Contreras (0087530)
**Contreras Law, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-787-4878
Fax: 614-957-7515
Email: peter.contreras@contrerasfirm.com


**COFFMAN LEGAL, LLC**

/s/ Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
*Trial Attorney*
Adam C. Gedling (0085256)
Kelsie N. Hendren (100041)
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
614.949.1181
614.386.9964 (Fax)
mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com
khendren@mcoffmanlegal.com

*Attorneys for Plaintiffs and others
similarly situated*

By: Drew C. Piersall
Drew C. Piersall (# 0078085)
Zashin & Rich Co., L.P.A.
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618
E-mail: dcp@zrlaw.com

*Trial Attorney for Defendant*

Stephen S. Zashin
Zashin & Rich Co., L.P.A.
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618
E-mail: ssz@zrlaw.com

Eric A. Gordon (*Admitted Pro Hac Vice*)
AKERMAN LLP
777 S. Flagler Drive, Suite 1100, West Tower
West Palm Beach, FL 33401-6183
Telephone: 561.653.5000
Facsimile: 561.659.6313
E-mail: eric.gordon@akerman.com

Sarah J. Lis (*Admitted Pro Hac Vice*)
AKERMAN LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-mail: sarah.lis@akerman.com

Andrew A. Karter (*Admitted Pro Hac Vice*)
AKERMAN LLP
520 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
E-mail: andrew.karter@akerman.com

10

63264830;1

*Co-Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May 2022, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Peter A. Contreras*
Peter Contreras (0087530)

11

63264830;1